## Jenkins v. Sadler, et al.

(Decided January 26, 1926.)

### Appeal from Monroe Circuit Court.

1. Boundaries—River Located as Intended by Parties to Patent.—While main channel locates river as matter of law, court's whole purpose in locating patent describing river as boundary is to follow parties' intention, and locate it where they in fact did.

2. Boundaries—Common Corner of Patents Held Located on Plaintiff's Side of Slough Separating Disputed Island from Main Channel of River.—In suit to enjoin trespassing on island in river between plaintiff's and defendant's lands, common corner of patents, under which each claimed, held located on plaintiff's side of slough separating island from main channel of river.

G. M. MILLER for appellant.

B. F. DENHAM for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

J. E. Sadler and J. C. Jenkins owned farms on the opposite sides of Barren river in Monroe county, and in 1920 a dispute arose between them as to the ownership of an island in the river. Sadler on May 23, 1921, brought this suit against Jenkins charging that he owned the land, that Jenkins was trespassing upon it, and praying an injunction enjoining Jenkins from trespassing upon it. A preliminary injunction was granted; Jenkins filed an answer denying the allegations of the petition; proof was taken and on final hearing the circuit court adjudged Sadler the relief sought. Jenkins appeals.

The controversy arises on the upper waters of Barren river, where the stream is not very large. Sadler claims under a patent issued to William Hicklin on De-

cember 26, 1916. Jenkins claims under patents issued by
the Commonwealth of Kentucky to Jacob Ryherd and Eli
C. Ryherd, issued June 12, 1839, and February 19, 1841.
There in no conflict between the three patents. The only
controversy is as to the proper location of the corners
of the senior patent. The controversy is illustrated in
the following rough map on which the broad mark A B
C D indicates the main current of the river as it now runs
and the broad mark B E D indicates what the parties
called a slough through which the water runs when the
river is up, but does not run at ordinary stages of the
water. The land lying between the two broad marks is
the island in controversy.

Sadler married a daughter of Nancy Lee. His deed
calls for the same boundary of land here as was set apart
to Nancy Lee as dower and the boundary set apart to her
as dower follows here the Hicklin patent, so his rights
depend upon the proper location of the Hicklin patent.

Running from a corner not in dispute the Hicklin patent reads:

"Thence south 40 W. 110 poles, crossing said fork to two beeches; thence down the same with its meanders S. 11 E. 38 poles, S 57 W. 40 poles, etc."

It is shown by uncontradicted evidence that the two beeches stood at the point 1 on the map. They were well marked and the stump of one of them is there still. There is no effort in the evidence to locate this corner elsewhere. It will also be observed that in running to the beeches the patent uses the words "crossing said fork," and it shows what fork is meant, for above it describes the land as on the east fork of Big Barren river. The course of this line S. 40 W. crossing the fork shows that the corner is on the west side of the river, or else the line would not cross the fork to get to the corner. The courses given in the patent after leaving the beeches correspond with the course of the river, if the whole of the bottom between the two pencil lines is considered the river. One witness testifies that when he first knew what is now the island, water stood ten feet deep over the lower part of it. There is no contrary evidence. There may have been little or no island there in 1816. The proof shows that there is a high bank along the west side of what is called the slough, and this high bank on the west side of the water might very naturally in 1816 be called the bank of the river. The corners of the Ryherd patents are undisputed. One of them runs from established corners to the oak and beech at 2, thence N. 39 W. 60 poles to the beech at 1. Both the old patents unmistakably corner upon this beech. But the circuit court was of the opinion that the meanders of the river must control and that if this beech did not stand on the bank of the main channel of the river, the river and not the beech controlled. While as a matter of law the main channel of the river locates the river, this may shift from time to time, and in locating a patent the whole purpose of the court is to follow the intention of the parties and to locate it where they in fact located it. The proof is satisfactory that the two beeches stood at 1 and were well marked. While Sadler testified that he did not recognize this as the corner, there is testimony in the record that he did recognize it for years, and he himself testifies that he did not know that he owned this land although he had lived there for forty odd years until he got to looking at his deed about five years before this

suit was brought. Under all the evidence the court is satisfied that the so called island is much larger now than it was when the patents were located and that at that time the two beeches were regarded as standing on the bank of the river. Ryherd knew the location of the Hicklin patent and evidently was running to avoid conflict with it. The proper location of the two patents from the other established corners unmistakably fixes the two beeches at 1 as their common corner, and this explains why the words "crossing said fork" were used in the Hicklin patent, for if the beech corner had stood on the east side of the main channel these words could not have been used.

Judgment reversed and cause remanded for a judgment for the defendant.